John Fattorusso, Respondent-Appellant, v RJR Mechanical, Inc., et al., Appellants-Respondents. [16 NYS3d 844]—

In an action, inter alia, to recover damages for breach of contract, the defendants appeal from a judgment of the Supreme Court, Queens County (Kitzes, J.), entered December 11, 2012, which, upon a decision of the same court dated

November 19, 2012, made after a nonjury trial, is in favor of the plaintiff and against them in the principal sum of $63,131.38, plus interest at the statutory rate from April 22, 2009, and the plaintiff cross-appeals, on the ground of inadequacy, from the same judgment.

Ordered that the judgment is modified, on the law and the facts, by reducing the award to the plaintiff from the principal sum of $63,131.38, plus interest at the statutory rate from April 22, 2009, to the principal sums of $44,270.52, plus interest at the statutory rate from April 22, 2009, and $17,750.02, plus interest at the statutory rate from March 16, 2008; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate amended judgment.

The plaintiff and the defendants Roy M. Leibowitz and Randy Karpman each owned one third of the shares of the defendant RJR Mechanical, Inc. (hereinafter RJR), a company that constructed mechanical heating, ventilation, and air conditioning units. On January 30, 2006, the three principals entered into an agreement, pursuant to which Leibowitz and Karpman purchased the plaintiff's interest in RJR, and the plaintiff resigned from his position with RJR. Under the terms of the agreement, the plaintiff retained an interest in two claims for additional costs that RJR had previously asserted against owners of buildings, one of which was the Dormitory Authority of the State of New York (hereinafter DASNY). The agreement also required RJR to set aside, from the DASNY settlement proceeds, $100,000 on behalf of each of the three shareholders of RJR as a reserve fund to cover the costs and liabilities of separate ongoing litigation commenced by Coastal Sheet Metal Corp. (hereinafter Coastal) against RJR, and thereafter to pay the plaintiff, from the remainder, one third of any claim amount recovered within 45 days of its receipt of any DASNY settlement proceeds, "reduced by any direct payments or expenses due to be remitted from the proceeds."

The plaintiff commenced this action to recover, inter alia, a one-third share of $493,597.60, which was the amount of the claim successfully asserted by RJR against DASNY with respect to a project identified in the agreement. RJR had received that sum from DASNY on January 31, 2008. After a nonjury trial, the Supreme Court found that the plaintiff failed to demonstrate that any funds remained from the DASNY settlement after RJR made direct payments to subcontractors and consultants that were due to be remitted from the proceeds.

However, the Supreme Court determined that the plaintiff was entitled to recover $63,131.38 from his $100,000 reserve, after deducting his one-third share of the costs and liabilities of the Coastal litigation. In making this calculation, the Supreme Court determined that the plaintiff was not obligated to pay any part of the sum of $112,812.50, representing the amount of three checks that RJR had issued to "CSM" at the request of a purported principal of Coastal, but that Coastal never received. The court found that Leibowitz and Karpman were responsible for improperly issuing those three checks, and that the plaintiff should not be held responsible for this portion of Coastal's unpaid judgment against RJR. The defendants appeal, and the plaintiff cross-appeals, from the judgment. We modify the judgment to correct an error in calculation made by the Supreme Court.

"In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial court had the advantage of seeing and hearing the witnesses" (*Hall v McDonald*, 115 AD3d 646, 647 [2014]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]).

"[T]he intent of the parties controls and if an agreement is 'complete, clear and unambiguous on its face[,] [it] must be enforced according to the plain meaning of its terms' " (*Beardslee v Inflection Energy, LLC*, 25 NY3d 150, 157 [2015], quoting *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations" (*Ellington v EMI Music, Inc.*, 24 NY3d 239, 244 [2014] [citation and internal quotation marks omitted]). Where a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent (*see Schron v Troutman Sanders LLP*, 20 NY3d 430, 436 [2013]; *Greenfield v Philles Records*, 98 NY2d at 569).

Here, the agreement unequivocally provided that the plaintiff was to be entitled to one third of the amount recovered by RJR in connection with its claim against DASNY, "reduced by any direct payments or expenses due to be remitted from the proceeds." Further, $100,000 of this amount was to be held in reserve to pay the plaintiff's share of the Coastal litigation costs and liabilities. Thus, the first step in determining the plaintiff's interest in the claim is to calculate his one-third

share of the claim amount, reduced by payments to the subcontractors and consultants.

The evidence established that RJR received $493,597.60 from DASNY. Contrary to the Supreme Court's finding, a net sum of $353,250.07 remained after the payment of expenses to subcontractors and consultants. Specifically, claims consultant PCG, Inc., charged RJR the sum of $29,822.53 for its work in connection with the claim, RJR paid subcontractor United Fire Protection, Inc., the sum of $90,142 for work on the project, and RJR paid subcontractor Horizon Contracting, LLC, the sum of $20,383 for its share of the claim, for a total of $140,347.53 in direct payments and expenses. Thus, RJR's net recovery on the DASNY claim was $353,250.07. The plaintiff's one-third share is thus $117,750.02, of which $100,000 was to be held in reserve for the Coastal litigation, and the remaining $17,750.02 was to be paid to the plaintiff within 45 days of receipt of the claim pursuant to the parties' agreement. Accordingly, in connection with his cause of action to recover his share of the proceeds of the recovery obtained by RJR in connection with its claim against DASNY, the plaintiff is entitled to recover the principal sum of $17,750.02, with statutory interest from March 16, 2008, which was 45 days after RJR received the proceeds of the settlement from DASNY.

Inasmuch as the Coastal litigation has been completed, the $100,000 reserve held in connection with that litigation must also be considered in determining whether any monies are due to the plaintiff from that amount. With respect to how the plaintiff's $100,000 reserve was to be handled at the end of that litigation, the terms of the agreement are ambiguous. The agreement simply provided that "[a]ny amounts so reserved shall be held in a separate account by RJR, not to be commingled with RJR operating funds. RJR shall reserve the entire amount and upon distribution, all parties shall receive this amount." Since the parties' intent is unclear from this language, extrinsic evidence may be considered (*see Schron v Troutman Sanders LLP*, 20 NY3d at 436; *Greenfield v Philles Records*, 98 NY2d at 569).

At trial, Leibowitz and Karpman testified that the parties agreed to hold in reserve the sum of $100,000 from the plaintiff's share of the recovery from DASNY as his expected one-third share of the anticipated costs and liabilities in the Coastal litigation. Construing the language in the agreement in light of this testimony, the "entire amount" to be held in reserve by RJR refers to the sum of $300,000, with each shareholder of RJR contributing $100,000 towards the Coastal

litigation. Thus, the equal distribution refers to the distribution of any remaining balance after so much of the $300,000 reserve as was necessary to pay the costs and liabilities of the Coastal litigation had been disbursed. Accordingly, as the Supreme Court correctly found, the agreement provided that the plaintiff is entitled to recover one third of any remaining balance after that portion of the $300,000 reserve was allocated to pay the costs and liabilities of the Coastal litigation.

In determining the costs and liabilities attributable to the Coastal litigation, the Supreme Court correctly considered the parties' respective responsibility for the outcome of the litigation, and reduced the plaintiff's share of the litigation costs and liabilities accordingly. The court properly found that the parties intended for it to determine their personal fault in contributing to the Coastal judgment, and to reduce any nonresponsible party's share of the litigation costs and liabilities. The evidence established that RJR, at the sole discretion of Karpman, made payments totaling $112,812.50, which it intended to remit to Coastal, to the wrong entity. The evidence established that the judgment entered against RJR in the Coastal litigation was $280,000.95 (see *Coastal Sheet Metal Corp. v RJR Mech. Inc.*, 82 AD3d 600, 600 [2011]). Since the judgment obtained by Coastal against RJR took account of the fact that Coastal never received the $112,812.50 that was paid to the wrong entity, the plaintiff was entitled to recover one third of that sum, or $37,604.17, plus the sum of $6,666.35, constituting the remainder of the plaintiff's $100,000 reserve after subtracting $93,333.65, representing one third of the total Coastal judgment. Thus, the principal amount due to the plaintiff in connection with his cause of action to recover the undisbursed portion of his $100,000 reserve fund that was established in connection with the Coastal litigation was $44,270.52, plus interest from April 22, 2009, the date that Coastal's judgment against RJR was entered.

Since the sum of the two principal awards that are due to the plaintiff is less than the principal amount awarded to him by the Supreme Court, and the interest on those two awards began to accrue on different dates, we must reduce the award to the plaintiff from the principal sum of $63,131.38, plus interest at the statutory rate from April 22, 2009, to the principal sums of $44,270.52, plus interest at the statutory rate from April 22, 2009, and $17,750.02, plus interest at the statutory rate from March 16, 2008. Mastro, J.P., Chambers, Austin and Miller, JJ., concur.