Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC (2021 NY Slip Op 01036)





Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC


2021 NY Slip Op 01036


Decided on February 17, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 17, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SYLVIA O. HINDS-RADIX
ROBERT J. MILLER
LINDA CHRISTOPHER, JJ.


2019-08218
 (Index Nos. 604173/14, 604894/14, 600098/17)

[*1]Long Island Medical & Gastroenterology Associates, P.C., et al., respondents, 
v
Mocha Realty Associates, LLC, et al., appellants. (Action No. 1.)
Long Island Medical Anesthesiology, P.C., etc., et al., appellants,
v
Long Island Medical & Gastroenterology Associates, P.C., et al., respondents. (Action No. 2.)
Long Island Medical Anesthesiology, P.C., etc., et al., appellants,
v
Long Island Medical & Gastroenterology Associates, P.C., et al., respondents. (Action No. 3.)


Law Offices of Paul D. Stone, P.C., Tarrytown, NY, for appellants.
Rosenberg Fortuna & Laitman, LLP, Garden City, NY (David I. Rosenberg and Brett D. Zinner of counsel), for respondents.



DECISION & ORDER
In three actions, inter alia, to recover damages for breach of contract, Mocha Realty Associates, LLC, a defendant in Action No. 1, Richard Gabay, a defendant in Action No. 1 and a plaintiff in Action Nos. 2 and 3, and Long Island Medical Anesthesiology, P.C., a plaintiff in Action Nos. 2 and 3, appeal from a judgment of the Supreme Court, Nassau County (Timothy S. Driscoll, J.), entered May 31, 2019. The judgment, insofar as appealed from, after a nonjury trial, and upon a decision of the same court dated March 11, 2019, denied the counterclaims in Action No. 1 and dismissed the complaints in Action Nos. 2 and 3.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
In 1991, Richard Gabay, an anesthesiologist, began providing services for Long Island Medical & Gastroenterology Associates, P.C. (hereinafter LIMGA), a medical practice owned by Jay G. Merker, Stewart A. Robbins, and Nathan D. Schulman (hereinafter collectively the LIMGA doctors). In 1999, Gabay and the LIMGA doctors formed Mocha Realty Associates, LLC (hereinafter Mocha), for the purpose of acquiring premises located at 192 East Shore Road, in Great Neck, which Mocha purchased in 2000. In 1999 and/or 2000, the LIMGA doctors and Gabay formed Day Op of North Nassau, Inc. (hereinafter Day Op) for the purpose of operating an ambulatory surgery center (hereinafter ASC). Mocha leased roughly half of the property to Day Op and half to LIMGA. At all times relevant to this litigation, Gabay and the individual LIMGA doctors each held [*2]a 25% interest in Day Op and a 25% interest in Mocha.
In 2006, Gabay and his professional corporation, Long Island Medical Anesthesiology, P.C. (hereinafter LIMA; hereinafter together with Mocha and Gabay the appellants), and Day Op agreed that Day Op would "engage[ ] LIMA as the exclusive provider of professional anesthesiology services to [Day Op]" (hereinafter the exclusivity agreement). Pursuant to the exclusivity agreement, LIMA had "the exclusive right and responsibility to provide all [anesthesiology services] which [Day Op] makes available to its patients," and was correspondingly obligated to "ensure coverage of [Day Op] . . . by LIMA's physicians, physician's assistants and certified registered nurse anesthetists."
In the mid to late 2000s and into the early 2010s, health insurance carriers began to apply "site-of-service differentials." The site-of service differential resulted in an approximate 50% fee reduction for procedures performed by the LIMGA doctors in an ASC versus procedures performed in an office-based setting, but did not affect LIMA's reimbursements for anesthesia. In response to this change, sometime between 2008 and 2010, the LIMGA doctors constructed an office-based surgery suite (hereinafter OBS) in their space using funds from Day Op. By 2011, many insurers would not cover ASC procedures that could be performed in an OBS. The LIMGA doctors constructed a second OBS suite in 2013 and, by August 2013, almost all LIMGA's procedures were being performed in an OBS.
As a result of disputes between the parties, in November 2014, the LIMGA doctors, as directors and shareholders of Day Op, voted to terminate the exclusivity agreement and force the redemption of Gabay's interest in Day Op. This litigation followed, consisting of the appellants' claims and counterclaims against LIMGA and the LIMGA doctors and the LIMGA doctors' claims against Gabay. The cases were consolidated for a nonjury trial, after which the Supreme Court found, inter alia, that the appellants failed to prove their claims or counterclaims against LIMGA and the LIMGA doctors. This appeal ensued.
In reviewing a determination made after a nonjury trial, this Court's authority is as broad as that of the trial court, and it may render the judgment it finds warranted by the facts, taking into consideration that in a close case the trial court had the advantage of seeing and hearing the witnesses (see Baba-Ali v State of New York, 19 NY3d 627, 640; Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499). Nevertheless, "'[w]here the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations'" (Reingold v Bowins, 180 AD3d 722, 723, quoting Bennett v Atomic Prods. Corp., 132 AD3d 928, 930).
The "'fundamental, neutral precept of contract interpretation . . . [is] that agreements are construed in accord with the parties' intent,' and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing'" (Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d 327, 340, quoting 2138747 Ontario, Inc. v Samsum C & T Corp., 31 NY3d 372, 377, quoting Greenfield v Philles Records, 98 NY2d 562, 569). A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations (see Gilbane Bldg. Co./TDX Constr. Corp. v St. Paul Fire & Mar. Ins. Co., 31 NY3d 131, 135; Federico v Dolitsky, 176 AD3d 916, 918). "'Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole'" (Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082, quoting Ellington v EMI Music, Inc., 24 NY3d 239, 244).
Contrary to the appellants' contention, the plain language of the exclusivity agreement did not obligate the LIMGA doctors to perform all, or any percentage, of patient procedures in the Day Op facility; instead, the exclusivity agreement merely provided that, where procedures were performed in Day Op's facilities, LIMA had the exclusive right to provide anesthesia services. Moreover, although LIMGA's principals (i.e., the LIMGA doctors) were also principals of Day Op, neither LIMGA nor the doctors personally were parties to the exclusivity agreement, which was [*3]between LIMA and Day Op. LIMGA and the LIMGA doctors therefore were not bound by the exclusivity agreement (see Arroyo v Central Islip UFSD, 173 AD3d 814, 816; Victory State Bank v EMBA Hylan, LLC, 169 AD3d 963; Belair Care Ctr., Inc. v Cool Insuring Agency, Inc., 161 AD3d 1263, 1270). Similarly, no provision of the exclusivity agreement indicates that the parties to the agreement expected it to govern their actions outside Day Op's space. Accordingly, the Supreme Court correctly determined that the appellants failed to present evidence establishing that LIMGA or the LIMGA doctors breached the exclusivity agreement by performing procedures in the OBS rather than in Day Op's ASC.
The appellants also claim that, in the spring of 2014, LIMGA and the LIMGA doctors violated the exclusivity agreement by contracting with an alternative anesthesia provider to provide services in the OBS. However, since LIMGA was not bound by the exclusivity agreement, the Supreme Court correctly determined that this did not constitute a breach.
Although section 1 of the exclusivity agreement gave LIMA the right to be the "exclusive provider of professional anesthesiology services to [Day Op]," section 3.2.1 required LIMA to "ensure coverage of [Day Op] . . . by LIMA's physicians, physician's assistants and certified registered nurse anesthetists," and section 3.2.2 required Gabay to be present at Day Op during at least 70% of Day Op's business hours. The exclusivity agreement also required LIMA to use its own provider number for billing and coding or those of LIMA staff. Day Op had the right to terminate the exclusivity agreement based upon, inter alia, LIMA's material breach of its obligations; however, LIMA was entitled to written notice of the breach and a 30-day cure period.
The credible evidence supports the Supreme Court's conclusion that, on March 31, 2014, the LIMGA doctors notified Gabay that they regarded LIMA's use of professional staff employed by another professional entity which was billing for services as a breach of the exclusivity agreement, and that Gabay failed to cure the breach. Read in the context of the agreement as a whole, it is clear that sections 3.2.1 and 3.2.2 of the exclusivity agreement required Gabay and LIMA to personally hire and supervise staff and to provide services, not merely to provide a staffing service (see generally Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 482; Buchanan Capital Mkts., LLC v DeLucca, 150 AD3d 436, 437). Moreover, Gabay admitted that anesthesia services were billed by an entity known as Five Boroughs Medical Associates Anesthesia under its provider number in violation of LIMA's obligation to "perform . . . billing, coding and collection in its name and provider number or the names and provider numbers of its professionals." Accordingly, the court correctly concluded that the LIMGA doctors both met their obligation to give notice of the breach and had adequate grounds on which to terminate the exclusivity agreement (see Colon v Porsche of Roslyn, 164 AD3d 747, 748).
Day Op's shareholder agreement provided, inter alia, that Gabay's interest could be terminated for cause, and he could be forced to redeem his interest, upon, inter alia, the termination of the exclusivity agreement. Since there were adequate grounds to terminate the exclusivity agreement, likewise there were grounds to force Gabay to redeem his interest in Day Op.
On directing Gabay to redeem his shares in Day Op, the LIMGA doctors concluded that, since Day Op had been operating at a financial loss for the past two years, Gabay's interest had no value and thus offered no compensation. That valuation was consistent with Day Op's operating agreement, which provided that the purchase price to redeem the shares of a member whose interest had been terminated was 50% of "the average annual net profit of the Corporation for the prior two (2) calendar years based on the cash basis of accounting adjusted for depreciation multiplied by the Selling Shareholder's percent of ownership." Accordingly, the Supreme Court correctly determined that Gabay failed to demonstrate that he was entitled to additional compensation for the termination of his interest in Day Op.
The Supreme Court also correctly concluded that the actions of the LIMGA doctors did not artificially depress the value of Day Op. On the contrary, the credible evidence established that, at the time that LIMGA began to move patient procedures from the ASC to the OBS, LIMGA's business was teetering on the brink of insolvency and bankruptcy due to financial losses caused by [*4]the site-of-service differential. Although they were not required to do so, on moving procedures to the OBS, the LIMGA doctors continued using LIMA's services, thus demonstrating their good faith and ensuring a continuing income stream for Gabay notwithstanding their inability to perform procedures in the ASC. Moreover, nothing in the record suggests that the LIMGA doctors, who were also principals of Day Op, obtained any advantage from its financial distress. Accordingly, the court properly rejected Gabay's allegation that the LIMGA doctors artificially depressed Day Op's value. The court also correctly concluded that, since Gabay's interest in Day Op had been properly terminated pursuant to the operating agreement, he lacked standing to seek Day Op's dissolution (see Business Corporation Law § 1104-a; Artigas v Renewal Arts Realty Corp., 22 AD3d 327, 327-328; Weiner v Anesthesia Assoc. of W. Suffolk, 203 AD2d 455, 456-457).
In 2007, in response to its dropping reimbursement rates, LIMGA reduced its rent payments to Mocha from $15,000 monthly to $7,000 monthly. The parties dispute whether Gabay agreed to the rent reduction, though Gabay conceded that he did not object in writing and that, prior to 2014, he took no action to enforce the agreed-upon rent. The LIMGA doctors, for their part, conceded that, although they believed that the reduction was authorized under section 6.2 of Mocha's operating agreement, they did not follow the formal modification procedure set out therein.
The Supreme Court credited the LIMGA doctors' claim that LIMGA became unable to pay its $15,000 monthly rent, and the record, which contains unrebutted evidence of changes to the insurance landscape which radically affected the business aspects of LIMGA's practice, supports that conclusion. The court correctly observed that although the lease had a nonwaiver provision, a nonwaiver clause does not preclude a finding of waiver (see Dice v Inwood Hills Condominium, 237 AD2d 403, 404; see also Stassa v Stassa, 123 AD3d 804, 806). Although the appellants are correct that "[a] waiver is not created by negligence or oversight and cannot be inferred from mere silence" (455 Dumont Assoc., LLC v Rule Realty Corp., 180 AD3d 735, 737; see Stassa v Stassa, 123 AD3d at 806), here, the court providently exercised its discretion in finding that Gabay's failure to complain for approximately seven years despite his acknowledged awareness that LIMGA was paying less than the agreed-upon rent amounted to waiver and therefore properly denied his claim to recover back rent on behalf of Mocha.
"On application by a member, the Supreme Court may decree dissolution of a limited liability company 'whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement'" (PFT Tech., LLC v Wieser, 181 AD3d 836, 838, quoting Limited Liability Company Law § 702; see Matter of FR Holdings, FLP v Homapour, 154 AD3d 936, 937). "[T]o demonstrate entitlement to dissolution, the member seeking such relief 'must establish, in the context of the terms of the operating agreement or articles of incorporation, that (1) the management of the entity is unable or unwilling to reasonably permit or promote the stated purpose of the entity to be realized or achieved, or (2) continuing the entity is financially unfeasible'" (Matter of FR Holdings, FLP v Homapour, 154 AD3d at 937-938, quoting Matter of 1545 Ocean Ave., LLC, 72 AD3d 121, 131; see Mace v Tunick, 153 AD3d 689, 690).
Here, Gabay and the LIMGA doctors formed Mocha to own and operate real property. At the time of trial, Mocha's real property, which was still occupied by LIMGA and Day Op, was valued at between $3.8 and $4.8 million, and Mocha had only one mortgage payment remaining. Accordingly, the Supreme Court correctly determined that Gabay failed to demonstrate either that Mocha was not fulfilling the purpose for which it was formed or that its continued operation was not financially unfeasible.
In light of the foregoing, we need not address the LIMGA doctors' remaining contentions. The appellants' remaining contentions are without merit.
DILLON, J.P., HINDS-RADIX, MILLER and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court