Onekey, LLC v Byron Place Assoc., LLC (2021 NY Slip Op 07007)





Onekey, LLC v Byron Place Assoc., LLC


2021 NY Slip Op 07007


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI
LARA J. GENOVESI, JJ.


2019-09700
 (Index No. 52144/15)

[*1]Onekey, LLC, respondent-appellant,
v
Byron Place Associates, LLC, appellant-respondent.


Welby, Brady & Greenblatt, LLP, White Plains, NY (Alan D. Singer of counsel), for appellant-respondent.
Diane L. Mulligan, Poughkeepsie, NY, for respondent-appellant.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendant appeals, and the plaintiff cross-appeals, from a judgment of the Supreme Court, Westchester County (Linda S. Jamieson, J.), dated July 26, 2019. The judgment, insofar as appealed from, upon a decision of the same court dated June 4, 2019, made after a nonjury trial, is in favor of the plaintiff and against the defendant in the principal sum of $547,043.84. The judgment, insofar as cross-appealed from, failed to award the plaintiff damages for loss of future profits in the principal sum of $564,007.35.
ORDERED that the judgment is affirmed insofar as appealed from; and it is further,
ORDERED that the judgment is reversed insofar as cross-appealed from, on the law and the facts, and the plaintiff is awarded the principal sum of $564,007.35 for loss of future profits, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
In 2011, the parties entered into a construction contract wherein the defendant hired the plaintiff as a construction manager for a condominium project on the defendant's lot. Pursuant to the 2011 construction contract and related documents, the plaintiff was to perform all work on the project, including the mechanical, electrical, and plumbing work (hereinafter MEP work), and the contract allotted the plaintiff a construction management fee of 3% of the total cost of the project. In 2013, before construction began, the parties executed a modification to the previous contract documents (hereinafter the 2013 modification). The 2013 modification removed the price estimates for the MEP work from the guaranteed maximum price and replaced the values with dashes. After the plaintiff completed the project's substructure and began work on the superstructure, the defendant requested that the plaintiff award contracts for the MEP work. A dispute arose when the plaintiff maintained that awarding contracts for the MEP work required a change order, entitling the plaintiff to a 15% fee, while the defendant maintained that the MEP work was contemplated by the 2013 modification and thus the plaintiff was entitled only to the normal 3% fee. The defendant then [*2]terminated the plaintiff's services under the contract.
The plaintiff thereafter commenced this action, inter alia, to recover damages for breach of contract, alleging that the defendant breached the 2011 contract by terminating the plaintiff's services as construction manager. The defendant answered and asserted a counterclaim for breach of contract, alleging that the plaintiff breached the 2011 contract and the 2013 modification, inter alia, by failing to award the contracts for the MEP work as requested by the defendant and by failing to adequately perform its work. After a nonjury trial, the Supreme Court determined that the plaintiff did not breach the contract by failing to award MEP contracts, the defendant failed to submit evidence demonstrating that the plaintiff's work was deficient, and the defendant wrongly terminated the plaintiff's services. The court determined that the plaintiff was entitled to an award of $408,185.47, plus interest, for its work on the substructure, and $138,858.37, plus interest, for its work on the superstructure. The court, however, declined to award the plaintiff lost profits for the remainder of the project, which the plaintiff maintained totaled $564,007.35. On July 26, 2019, a judgment was entered awarding the plaintiff $547,043.84, plus statutory interest and costs. The defendant appeals, and the plaintiff cross-appeals.
In reviewing a factual determination made after a nonjury trial, the power of the Appellate Division is "as broad as that of the trial court," and this Court "may render the judgment it finds warranted by the facts," bearing in mind that in a close case, "the trial judge had the advantage of seeing the witnesses" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [internal quotation marks omitted]; see Baba-Ali v State of New York, 19 NY3d 627, 640; Split Rock Devs., LLC v Zartab, Inc., 135 AD3d 845, 846). "Where the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations" (Bennett v Atomic Prods. Corp., 132 AD3d 928, 930; see Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC, 191 AD3d 857, 859; Reingold v Bowins, 180 AD3d 722, 723).
"Where a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent" (Fattorusso v RJR Mech., Inc., 131 AD3d 1098, 1100; see Greenfield v Philles Records, 98 NY2d 562, 569). "[A]mbiguities in a contractual instrument will be resolved contra proferentem, against the party who prepared or presented it" (151 W. Assoc. v Printsiples Fabric Corp., 61 NY2d 732, 734; see Greenpoint Mtge. Corp. v Lamberti, 155 AD3d 1004, 1006).
Here, the 2013 modification was ambiguous as to whether the MEP work was included in the contract, as it replaced the price estimates for this work with dashes and removed this work from the guaranteed maximum price estimate. Furthermore, the 2013 modification provided that the plaintiff "shall be available" to the defendant to "finalize" the pricing of the MEP work, further creating an ambiguity as to whether the parties intended to insert price estimates for the MEP work into the 2013 modification at a later date, or meant to permanently remove them from the contract and enter into a separate agreement modifying the guaranteed maximum price to reflect these new prices.
Although the record contains conflicting testimony as to the parties' intentions in this regard, since the Supreme Court had the advantage of seeing the witnesses and chose to, in effect, credit the testimony of the plaintiff's president that the parties intended to remove the MEP work from the contract, deference is owed to the court's finding that the MEP work was removed from the contract (see Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC, 191 AD3d at 859; Reingold v Bowins, 180 AD3d at 723). Moreover, any ambiguity in the 2013 modification as to whether the MEP work was removed from the contract should be construed against the defendant as drafter of the contract (see Guardian Life Ins. Co. of Am., Inc. v Schaefer, 70 NY2d 888, 890; Aron Sec., Inc. v Unkechaug Indian Nation, 151 AD3d 674, 676). Thus, the court properly determined that the MEP work was no longer part of the contract.
The Supreme Court also properly determined that the defendant breached the 2011 contract by terminating the plaintiff's services rather than agreeing to a change order. The contract documents provide that a change order is required to increase the guaranteed maximum price of the [*3]project, and the record demonstrated that the MEP work would increase the guaranteed maximum price set forth in the 2013 modification. Therefore, since the plaintiff properly requested a change order for the MEP work, there was no breach of the 2011 contract warranting termination of the plaintiff's services, and the defendant breached the contract by refusing to issue a change order and terminating the plaintiff's services.
"'Damages awarded in a breach of contract action should place a plaintiff in the same position as it would have been if the agreement had not been violated'" (Chen v Wen Fang Wang, 177 AD3d 694, 695, quoting R & I Elecs. v Neuman, 66 AD2d 836, 837). "Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law" (Kenford Co. v County of Erie, 67 NY2d 257, 261). "A party may not recover damages for lost profits unless they were within the contemplation of the parties at the time the contract was entered into and are capable of measurement with reasonable certainty" (Ashland Mgt. v Janien, 82 NY2d 395, 403). "Damages resulting from the loss of future profits are often an approximation. The law does not require that they be determined with mathematical precision. It requires only that damages be capable of measurement based upon known reliable factors without undue speculation" (id. at 403).
Contrary to the defendant's contention, the Supreme Court properly awarded $547,043.84 in damages for unpaid work performed on the substructure and superstructure, as the invoices submitted and testimony of the plaintiff's president established the sums owed to the plaintiff. The court, however, erred in determining that the plaintiff was not entitled to damages for loss of future profits because the plaintiff failed to establish the existence of an agreement between the parties regarding the MEP work. The plaintiff did not seek lost profits for the value of the MEP work and instead limited its claim for loss of future profits to the 3% construction management fee for the guaranteed maximum price of the work not completed under the 2013 modification when the defendant terminated the contract. Since the 2011 contract established that the plaintiff was entitled to a 3% construction management fee for the total cost of the work, and the 2013 modification provided a schedule with itemized costs for each part of the project and a guaranteed maximum price, the plaintiff established with reasonable certainty that it was entitled to $564,007.35 for loss of future profits for the work remaining to be performed on the superstructure at the time that the defendant wrongfully terminated the contract (see Inspectronic Corp. v Gottlieb Skanska, Inc., 135 AD3d 707, 709; Family Operating Corp. v Young Cab Corp., 129 AD3d 1016, 1017-1018). Accordingly, the court should have awarded the plaintiff this amount for loss of future profits.
The defendant's remaining contentions are either academic in light of our determination or without merit.
MASTRO, J.P., BRATHWAITE NELSON, IANNACCI and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court