BLDG 89-41 164th St., LLC v JCM Invs., LLC (2026 NY Slip Op 50209(U))

[*1]

BLDG 89-41 164th St., LLC v JCM Invs., LLC

2026 NY Slip Op 50209(U)

Decided on February 13, 2026

Appellate Term, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 13, 2026
SUPREME COURT, APPELLATE TERM, SECOND DEPARTMENT, 2d, 11th and 13th JUDICIAL DISTRICTS
PRESENT: : WAVNY TOUSSAINT, P.J., MARINA CORA MUNDY , LISA S. OTTLEY, JJ

2025-136 Q C

BLDG 89-41 164th Street, LLC, Respondent,
againstJCM Investments, LLC, Appellant, XYZ Corp., 123, Inc., "John Doe" and "Jane Doe," Undertenants. 

Forchelli Deegan Terrana, LLP (Richard A. Blumberg of counsel), for appellant.
Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. (Nicole E. Meyer of counsel), for respondent.

Appeal from a final judgment of the Civil Court of the City of New York, Queens County (John C.V. Katsanos, J.), entered January 13, 2025. The final judgment, after a nonjury trial, awarded landlord possession and the principal sum of $55,450 in a commercial holdover summary proceeding.

ORDERED that the final judgment is reversed, without costs, and the petition is dismissed.
In this commercial holdover proceeding, landlord terminated tenant's 2013 lease of a rooftop parking lot based on 12 alleged breaches of that lease, enumerated in a notice dated March 14, 2023, and subsequent failure to cure them. In order to cure, the notice required tenant to "remove [and] replace the asphalt, install waterproofing materials beneath, make the roof water tight, repair all broken drainage, repair the structural slab, and properly install all materials so as to make all areas of the roof, including by parapet walls, water tight."
Tenant's general responsibilities over the duration of the 2013 lease are set forth in paragraph 4 and paragraph 45 (A), and specific responsibilities to be completed by May 1, 2014 are set forth in Schedule 1. Paragraph 4 requires tenant to "maintain and repair the demised premises in good condition" and, "at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them [sic] in good working order and condition." Exceptions to that repair requirement include "reasonable wear and tear" and "damage from the [*2]elements." Paragraph 45 (A) requires tenant to "promptly make as and when needed any and all repairs to the demised premises, including repair of the roof surface, as distinguished from the roof structure." However, tenant is obligated to repair "any damage to such structure due to the negligence or other misconduct of Tenant, its agents, contractors, employees, licensees or invitees." Landlord was specified to be responsible only for structural repairs. Under Schedule 1, tenant was required to, among other things, grind down the asphalt, fill all potholes level with the asphalt surface, seal or hot tar the surface, add asphalt fill if needed, and seal the entire rooftop deck. The notice to cure alleged that tenant did not do any of these things.
At a three-day trial, landlord's property manager testified that, in 2014, he observed tenant using a Bobcat to remove the asphalt. This, the witness testified, resulted in the removal of the waterproof membrane under the asphalt, a consequence of which was severe leakage into the building itself, causing problems for landlord's tenants in the building. Landlord's witness's testimony was limited to tenant's failure to perform certain required services before the asphalt was applied—he did not testify that tenant did not seal the rooftop deck after applying the asphalt. In contrast, the contractor who did the asphalt work in 2014 testified that his company used a Bobcat skid loader with a milling attachment, which grinds the blacktop, and then removed the millings. The witness also testified that his company did not grind down to the depth of the membrane and that a sealant and asphalt were installed over the remaining blacktop layer. He produced photographs and testified as to how these photographs supported his testimony. He further testified that one reason he took photographs of the work in 2014 was that "we didn't want to be accused of doing damage to the membrane." Tenant's asphalt contractor also testified that UV light degradation will cause asphalt roofing systems to dry out, crack and unlevel.
Both parties proffered extensive expert witness testimony. Both experts agreed that, at the time of trial, the only way to repair the roof was to remove everything down to the concrete structure and install a waterproof membrane, protection board, and asphalt. Landlord's position was that this was tenant's responsibility, as set out in the notice to cure. Tenant's position was that these were not repairs required of tenant under the lease, but that landlord was improperly using the notice to cure to try to force tenant to provide a new roof to replace the existing roof, which was more than 70 years old.
Following the trial, the Civil Court (John C.V. Katsanos, J.) concluded, in effect, that tenant had not complied with the notice to cure, but did not engage in any analysis regarding the propriety of the claims and demands made therein. The court found that, in 2014, tenant "only resurfaced the roof parking lot area with milling, certain flash coating and paving new asphalt to the edge of the roof, [but] such contractor did not install any counter flashing from the edge of such roof, waterproof membrane or protection board." However, the court did not explain why tenant would have been responsible, in 2014, for the installation of counter flashing, a waterproof membrane or protection board, given the provisions of Schedule 1, which set forth tenant's 2014 responsibilities. The court noted, without reference to any particular factual issue or testimony, that "petitioner's witnesses provided credible, non-conflicting testimony, while respondent's witnesses, in part, provided conflicting testimony." In a final judgment entered January 13, 2025, the Civil Court awarded landlord possession and the principal sum of $55,450.
In reviewing a determination made after a nonjury trial, the power of this court is as broad [*3]as that of the trial court, and we may render the judgment which we find is warranted by the facts, bearing in mind that the determination of a trier of fact as to issues of credibility is given substantial deference, as a trial court's opportunity to observe and evaluate the testimony and demeanor of the witnesses affords it a better perspective from which to assess their credibility (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; see also Baba-Ali v State of New York, 19 NY3d 627, 640 [2012]; Onekey, LLC v Byron Place Assoc., LLC, 200 AD3d 896, 897-898 [2021]; Lyakhovetskaya v Kallen, 61 Misc 3d 132[A], 2018 NY Slip Op 51452[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]).
The issue before this court in this holdover proceeding is whether landlord properly terminated the lease based upon the alleged breaches enumerated in the notice to cure and tenant's subsequent failure to cure them. Upon a review of the testimony and exhibits, including the 2013 lease, we find that landlord failed to prove any breaches of the lease alleged by landlord, including the failure to grind down the existing asphalt and appropriately replace what was removed. While the notice to cure states that tenant "failed to prevent the deterioration of the roof surface, allowing large cracks and potholes to form," landlord failed to demonstrate that the deterioration of the asphalt was not due to the normal wear and tear of blacktop, and therefore excepted from tenant's repair responsibilities. Indeed, tenant's witness testified that asphalt will degrade due to UV light exposure. Landlord also failed to demonstrate that the remaining items enumerated in the notice to cure actually constituted breaches of obligations under the lease. For example, while the notice to cure presumes that tenant was required to maintain the roof in watertight condition, prevent ponding, install drains, and "install an expansion joint between the two buildings," landlord has not identified any lease provision requiring tenant to do any of these things. Under the circumstances, landlord has not demonstrated that tenant was required to, in effect, remove the existing roof down to the structure and provide a brand new roof, notwithstanding that the notice to cure demanded it. Consequently, landlord has not demonstrated that it properly terminated the lease based upon tenant's failure to install a new roof.
We pass on no other issue.
Accordingly, the final judgment is reversed and the petition is dismissed.
TOUSSAINT, P.J., MUNDY and OTTLEY, JJ., concur.
ENTER:
Jennifer Chan
Chief Clerk
Decision Date: February 13, 2026